**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| SUZANNE SHORT and JACK SHORT,   ) | |
|                           ) | |
|       Plaintiff(s),        ) | CIVIL ACTION NO.: |
|                           ) | |
| v.                            ) | |
|                           ) | |
| CARNIVAL CORPORATION,    ) | |
| D/B/A CARNIVAL CRUISE LINE,  ) | |
|                           ) | |
|       Defendant(s).      ) | |

_____/

## <u>COMPLAINT and DEMAND FOR JURY TRIAL</u>

Plaintiffs, SUZANNE SHORT ("Ms. Short") and JACK SHORT ("Mr. Short") (collectively referred to as "Plaintiffs"), hereby bring this Complaint and Demand for Jury Trial against Defendant, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINE ("Defendant" or "Carnival"), and allege as follows:

## <u>NATURE OF THE CLAIM</u>

1.    This action seeks compensatory damages for Defendant's negligence in causing Ms. Short's severe and permanent injuries.  Mr. Short also seeks compensatory damages for his loss of consortium claim stemming from his wife's permanent and severe injuries.

2.    Defendant has been aware for some time now, dating back to at least December 2002, that its *Legend* cruise ship's open deck flooring presents a dangerous condition for its passengers.  This dangerous condition is only further exacerbated by Carnival's passengers tracking and dripping water, food, debris, grease, drinks, suntan lotions, oils, and other liquids through the restaurant area of the *Legend* cruise ship.  As alleged in further detail below, Carnival has simply failed to take reasonable steps to eliminate this dangerous condition from the Carnival

*Legend.* As a direct and proximate result of Carnival's negligence, Ms. Short sustained permanent and severe injuries.

## THE PARTIES

3.     Plaintiff, Ms. Short, is a resident and citizen of Dorchester County, Maryland, and otherwise *sui juris*.

4.     Plaintiff, Mr. Short, is a resident and citizen of Dorchester County, Maryland, and otherwise *sui juris*.

5.     Defendant, Carnival, is a foreign corporation incorporated outside the State of Florida, but does business in the State of Florida, regularly markets to residents of the State of Florida, does business in and maintains its headquarters in Miami-Dade County, Florida.

6.     At all times material hereto, Carnival owned and operated the cruise ship where the subject negligence occurred.

## JURISDICTION and VENUE

7.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interests and costs, is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign State. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

8.     This Court has personal jurisdiction over Plaintiffs, because Plaintiffs submit to the Court's jurisdiction.

9.      At all times material hereto, this Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because Defendant conducts substantial business in this District,  was carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to property in this state arising out of Defendant's acts and omissions outside this state and at or about the time of such injuries Defendant was engaged in solicitation or service activities within the state.

10.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

11.     On February 16, 2022, Plaintiffs were both ticketed passengers aboard the Carnival *Legend* cruise while it was in navigable waters.

12.     At all times material hereto, Ms. Short was an invitee on Defendant's *Legend* cruise ship.

13.     The subject incident occurred on the open deck flooring at Deck 9 of Carnival's *Legend* cruise ship in area surrounding Guy's Burger Joint.

14.      Carnival owes a duty of reasonable care under the circumstances.

15.      The Carnival *Legend* is a cruise ship which Carnival had custom built to specifications and designs which were made by or under the supervision and participation of Carnival. The *Legend* was designed by or at the direction of Carnival's shoreside New Build and other shoreside departments.  Carnival employs architects, designers, and engineers. The ship was built at the Helsinki New Shipyard in Helsinki, Finland, under the constant supervision  of Carnival's onsite construction managers, designers, architects,  and engineers. Under the contract with the shipyard, Carnival has not only full access to the ship to inspect and the ability

to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. Carnival holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, Carnival can withhold payment.  That includes the flooring materials which caused this fall and Ms. Short's injuries.

16.     The *Legend* was delivered to Carnival as finished and took its inaugural cruise on December 1, 2002. Carnival has operated and maintained the ship continuously since that time. The *Carnival Legend* has a capacity for 2,610 passengers and 930 crew members.  The Carnival *Legend* is a part of the *Spirit*-class cruise ships which includes the Carnival *Luminosa*, Carnival *Legend*, Carnival *Miracle*, Carnival *Pride* and Carnival *Spirit*.  Carnival has operated and maintained the other ships in the *Spirit*-class, listed above, continuously since the time when each of those ships were first built and put into service. Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all the *Spirit*-class ships, listed above. The design and construction of these ships was under supervision and with the participation of Carnival personnel who were stationed onsite in the shipyard during construction.

17.     Carnival chose to install flooring materials on its open decks which can be extremely slippery when wet. Carnival selected, designed, and constructed the flooring materials installed on the *Legend*'s open decks, including the area where Ms. Short fell. Upon information and belief, this flooring is a composite resin flooring made to look like teak wood flooring. Carnival installs this flooring on its open decks throughout Carnival's fleet of ships.

18.     Carnival provides various open deck restaurants on all its cruise ships, including the Carnival *Legend*.  Carnival *Legend*'s several open deck areas, including Deck 9 where the subject

incident occurred, offer numerous amenities such as restaurants, attractions, swimming pools, showers, waterslides, jacuzzies, and other activities. Carnival's restaurants and other amenities are open to passengers in the morning through late at night.  Hundreds if not thousands of Carnival's passengers repetitively use these amenities during Carnival cruises.  These open deck areas are open to passengers every day at all hours and therefore are in continuous operation.  Carnival knows that passengers repeatedly enter and exit Carnival's open deck restaurants and go into the pools or jacuzzies.  In doing so passengers not only track water over Carnival's open deck floors but they also apply sunscreens, suntan oils, and suntan lotions while sunbathing on the Carnival's open decks.  These oils and lotions drip directly onto the open deck surface and are washed onto that surface when sunbathers sweat and when they go into the pool and the pool water drips off of them and onto the deck carrying the oils and lotions onto the deck along with the water.  Passengers also repetitively spill food and drinks from Carnival's food buffets and open deck restaurants, like Guy's Burger Joint.  Carnival allows and anticipates that Carnival passengers will carry food and drink throughout the open decks and in doing so cause spills.  Carnival knows that its passengers who use its waterslides, showers, jacuzzies and pool areas drip and track water from its pools, showers, jacuzzies and waterslides throughout its open decks.  Carnival knew or should have known that passengers repetitively get wet and track water from the waterslides, showers, jacuzzies and pools throughout its open decks.  Carnival also knew or should have known that passengers tracking, and dripping water, food, and drinks causes liquid accumulations on its open decks including the Guy's Burger Joint restaurant area.

19.     Because of all this activity, Carnival knows its open deck flooring repetitively gets wet.  Therefore Carnival knows it is important and it must protect pedestrian traffic by inspecting open deck flooring for accumulations of water, drinks, foods, and other substances by

blocking off areas where liquid accumulates, cleaning, and drying these areas, and warning people in other ways (i.e. using signs or people to warn passengers away from the liquid accumulations, cordoning off areas that are in the process of being cleaned, or using blowers to dry the area). Carnival knows that the open deck flooring experiences significant foot traffic, and thus Carnival knows that its employees must take adequate safety measures to locate, warn, and remedy wet surfaces.

20.     Carnival knows from years of experience with this flooring and documenting numerous prior incidents of other slip and falls on this same type of flooring on all its ships, that the open deck flooring repetitively and continuously suffers accumulations of water, drinks, food, debris, and other liquids and is extremely and unreasonably slippery when wet. Carnival chose not to put a reasonable step, railing, mat, grips and/or other abrasive texture to the flooring to increase the floor material's slip resistance and/or make the open deck flooring including the Guy's Burger Joint restaurant area safe to step onto and/or walk.

21.     Passengers who eat at Carnival's designated restaurants reasonably expect that Carnival will clean, maintain, dry and make the area safe for passenger use. Carnival knows that its passengers must eat at one their designated restaurants, yet Carnival fails to inspect with sufficient regularity, fails to clean and dry with sufficient regularity, fails to block off wet and slippery parts of the flooring, fails to put down slip resistant mats and/or grips on the flooring, and fails to warn with sufficient signage. The dangerous nature of the flooring is not open and obvious because the flooring is obstructed by the tables surrounding the restaurant, other furniture, and/or accumulations of water blend in with the flooring which is shiny and reflective. Moreover, Ms. Short was forced to wear a facemask by Carnival, which further obstructed her ability to see accumulations of water properly.

## NOTICE

22.     In the late morning, early afternoon of February 16, 2022, Carnival's open deck restaurants, such as Guy's Burger Joint, had been open and in use by passengers for at least several hours. Throughout the day passengers repetitively and continuously dripped and tracked water, drinks, food, grease, lotions, and other liquids from Carnival's restaurants, pools, jacuzzies, and slides onto the open deck floors.  On the day of the incident Carnival by and through its deck personnel allowed a large liquid to accumulate at the tables area surrounding Guy's Burger Joint. Carnival's crew members allowed the liquid to accumulate and remain on the open deck floor for a significant period of time. Accordingly, the floor remained wet and dangerous.  The accumulation of puddles and/or liquid in this highly trafficked area was a continuous, ongoing, repetitive condition of which Carnival is well aware.

23.     Ms. Short was walking through Guy's Burger Joint to meet Mr. Short on Deck 9 when she stepped onto the open deck flooring.  As Ms. Short walked through the deck flooring and slipped and fell on a large accumulation of liquid which caused the floor to be unreasonably slippery.  Carnival allowed this large puddle to accumulate and remain on the floor for an extended period of time. The puddle that caused Ms. Short to slip and fall caused her to sustain severe and permanent injuries, including but not limited to, a tear of the medial meniscus in her left knee, which requires surgery to repair. Ms. Short has experienced and continues to experience pain, stiffness, weakness, and decreased mobility. These injuries are permanent and significantly affect the life and abilities of Ms. Short.  As a result of the permanent injuries sustained in this subject incident, Ms. Short is no longer able to provide spousal support, society, love, and/or affection to her husband, Mr. Short.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF ON BEHALF OF MS. SHORT
### Negligent Maintenance

24.     Ms. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

25.     This is an action for negligent maintenance. Defendant is vicariously liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).  The cruise line is vicariously liable for the negligence of its crew members. This ultimately is based on the fact that the crew members are employees of the cruise line. Therefore, under *respondeat superior* Carnival is liable for the negligence of all crew members working aboard its ships.

26.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Ms. Short. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *See also Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

27.     Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Carnival's open decks are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.

28.     Carnival owes a duty as a common carrier to its passengers to maintain all areas of its ship, including the Carnival *Legend.* Carnival owes a duty of reasonable care under the circumstances.  The circumstances are as follows.  One of Carnival's common areas are its open decks that Carnival operates on every one of its ships. Carnival hires and employs crew members who are responsible for reasonable maintenance of shipboard floor surfaces including those located on Carnival's open decks areas. Carnival provides its passengers entertainment, activities and events hosted by Carnival personnel including on its open deck areas which include its restaurant areas, such as Guy's Burger Joint.  Carnival's passengers have no choice but to eat at the designated restaurant areas, and oftentimes go from the restaurant directly into the

pools/jacuzzies and vice versa.  Passengers repetitively spill, drip, and track water, liquids, food, debris, grease, drinks and other liquids directly onto the area surrounding the open deck restaurants.  Additionally, passengers repetitively drip and track water from their wet swimsuits, waterslides, showers, jacuzzies and/or pools on the floor surfaces on Carnival's open decks. Liquid accumulates on Carnival's open deck floors from passengers repetitively spilling, dripping and tracking drinks and liquids on its floors.  This is an ongoing, continuous problem of which Carnival is well aware.  Carnival employs crew members who must carefully and with enough regularity inspect and monitor its floor surfaces and clean up spills, water accumulations and puddles. Because of all this activity within Carnival's open decks, including its restaurant areas, it is important for Carnival to keep its floors on the open decks restaurant areas clean and dry, actively inspect for spills, tracked liquids, rain water, sea spray, and other sources of liquids and/or water to clean them to prevent slip and falls.

29.     As part of Carnival's maintenance program crew members must dry the floor or cordon off the wet areas or put wet floor signs on the wet floors.  Carnival crew members must carefully and with sufficient regularity inspect and monitor for wet floors, spills, debris, oils, lotions, and other liquids on Carnival's open decks including restaurant table areas to prevent slip and falls. It is important to clean, dry, block off or warn passengers of wet floors on Carnival's open decks to prevent slip and falls.

30.     Because Carnival's open decks, including the restaurant areas, are highly trafficked by passengers and crew, Carnival knows that it must maintain its floor surfaces in a condition that complies with applicable industry standards, statutes, and/or regulations.  Carnival should comply with applicable industry standards, statutes, and/or regulations as part of its maintenance program to prevent slip and falls.

31.     Carnival breached its duty of reasonable care owed to Ms. Short under the circumstances. Carnival breached its duty of reasonable care owed to Ms. Short because Carnival failed to maintain its open decks including restaurant areas in a clean and dry condition.  Carnival failed to inspect and monitor its open decks including the restaurant areas such that it could find liquid accumulations and wet areas in order to clean and dry the floors.  Carnival failed to inspect and monitor areas for accumulations of water and/or liquids such that it failed to dry, cordon off or mark wet areas with warning signs. Carnival failed to maintain its floors such that they comply with applicable industry standards, statutes, and/or regulations. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

32.     Carnival's negligent acts through its employees occurred aboard the Carnival's ship caused severe and permanent injuries to Ms. Short on February 16, 2022. As a direct and proximate result of the negligence of Carnival's employees as described above, Ms. Short suffered severe and permanent injuries. Carnival is liable for these damages alleged herein because of the *respondeat superior* relationship with Carnival crew member employees as described herein.

33.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or

continuing.  Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

  **WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

**SECOND CLAIM FOR RELIEF ON BEHALF OF MS. SHORT**
**Negligent Failure to Warn**

  34. Ms. Short hereby incorporates by reference the allegations contained in the  preceding paragraphs of this Complaint.

  35. This is an action for negligence of Carnival failing to warn passengers, including Ms. Short, of its slippery floor surface on its open decks including the restaurant areas. Carnival's open decks including the restaurant area floors repetitively get wet with liquids from spills, sauces, food, tracking of liquids by passenger and crew member foot traffic.  Carnival's passengers repeatedly enter and exit Carnival's pools, showers, jacuzzies and waterslides throughout the day and drip and track water, drinks, and food throughout the open decks.  Carnival knew or should have known that the floor surfaces on its open decks including the restaurant areas are slippery when wet.  Wet areas can blend with Carnival's open deck flooring including the areas surrounding Guy's Burger Joint.  Carnival passengers may not know how slippery its floor surfaces on its open decks can be when wet.  Therefore, Carnival knew or should have known to warn its passengers that the floor surfaces on Carnival open decks including the restaurant areas can be slippery.

  36. Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Ms. Short. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the

circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *See also Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

37.     Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Carnival's open decks are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.

38.     Carnival owes a duty as a common carrier to its passengers of dangers known to

Carnival where Carnival invites or reasonably expects passengers to go.  Carnival owes a duty of reasonable care under the circumstances.  The circumstances are as follows.  Carnival encourages passengers to eat at its designated open deck restaurants such as Guy's Burger Joint. While eating at its open deck restaurants, Carnival's passengers are invited to walk through, socialize, enjoy the views, attend activities, events and entertainment and other amenities on Carnival's open decks.  It is expected that passengers, including Ms. Short, are going walk on or through Carnival's open decks including restaurant areas aboard Carnival's ships, such as the *Legend*.

39.    Carnival documents prior slip and falls, slipperiness, and water accumulations on its open decks including restaurant areas in various ways which may include prior shipboard meetings; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface.  Carnival also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  Carnival trains its crew members to warn passengers of wet floors by using wet floor signs, marking the area or blocking off the area to prevent passengers from walking on wet floors.

40.    Carnival breached its duty to warn Ms. Short of a dangerous condition on the open decks including the restaurant areas. Carnival breached its duties to Ms. Short by its actions and conduct.  Carnival through its crew members failed to place signs, stickers, lights, and other visual notices or written on or near the wet floor. Carnival and Carnival's crew members failed to make audible announcements that the open deck and/or restaurant area floors are dangerous and can be slippery when wet.  Carnival's crew members failed to cordon off the open decks area floors or place physical barriers on the floors or otherwise to prevent access to the floor where this puddle had accumulated.  Carnival also failed to comply with comply with applicable industry standards,

statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

41.     Carnival's failure to properly warn Ms. Short of the dangerous wet floor surface proximately caused Ms. Short's injuries. Had Carnival properly warned Ms. Short of the dangerous condition of the wet floors, Ms. Short would never have walked onto the floor surface. Ms. Short therefore would never have slipped and fallen onto the hard floor surface.

42.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## THIRD CLAIM FOR RELIEF ON BEHALF OF MS. SHORT
### Negligent Training and Supervision

43.    Ms. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

44.    This is an action for negligence due to Carnival's negligent training of shipboard crew members. Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows. Carnival trains its shipboard crew members to warn passengers that floors may be slippery when wet. Carnival's open decks including the restaurant area floor surfaces repeatedly get wet from passengers dripping and/or tracking water, drinks, debris, food, oils, optionss, and other liquids on the floor. Carnival knew or should have known to train crew members to warn passengers, including Ms. Short, that the floors surface on the open decks can be slippery when wet.

45.    Carnival trains its crew members to inspect for wet areas and to clean and dry floors. Carnival trains its crew members how to keep floors clean and dry. Carnival trains its crew members how to keep the floors clean and dry in order to prevent slip and falls. Carnival trains its crew members to warn passengers, including Ms. Short, of wet floors to prevent slip and falls. Carnival trains its crew members that passengers may not be able to see wet areas on its floors and that passengers may not know how slippery its floors may be when wet. Especially when passengers' vision is further obstructed by facemasks.

46.    Carnival also documents prior slip and falls, complaints of slipperiness and water accumulations on the open deck, including the restaurant table areas flooring, in various ways which may include logs or databases of prior slip and falls on Carnival ships on the same or similar type of floor; Carnival's shipboard meetings; prior complaints made to guest services throughout

its fleet; and prior slip testing of the floor surface. Carnival distributes crew member training materials; other safety warning messages including those made through verbal announcement, newsletters and safety videos regarding its open decks including the area where the subject incident occurred. Carnival knew or should have known the importance of training its crew members to warn passengers that the floors in its open decks including the restaurant table areas are slippery when wet. Despite knowing how and the reason why Carnival should train its crew members to warn and maintain the floors in a clean and dry condition, Carnival failed to do so.

47. Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including Ms. Short. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train and supervise its shipboard crew members.

48. Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Carnival's open decks are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition. Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors. Therefore, Carnival knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn

passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.  Carnival therefore knew the importance and necessity to train and supervise its crew members to keep its open deck floors clean and dry.

49.     Carnival's duty to train its crew members to inspect and maintain the open decks including the restaurant areas in a clean and dry condition; block and/or cordon off wet floors and warn passengers that the open decks including the restaurant areas are slippery when wet, is part of Carnival's duty of reasonable care under the circumstances. This duty requires Carnival to train crew members how to properly and appropriately warn passengers of wet floor; to inspect and maintain floors in a clean and dry condition; and cordon and/or block off areas with wet floors.

50.     Carnival breached its duty of care owed to Ms. Short and was negligent by failing to reasonably train its crew members how to inspect for wet areas and puddles on a regular basis, maintain the open decks including the restaurant area floors in a clean and dry condition, cordon and/or block off wet areas to prevent passengers from walking on wet floors and warn passengers the flooring can be slippery when wet.  Carnival failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

51.     Carnival's failure to properly train and supervise Carnival crew members proximately caused Ms. Short's injuries.  Had Carnival properly trained and/or supervised Carnival's crew members how to inspect for wet areas and puddles on a regular basis, maintain the flooring in a clean and dry condition and warn passengers the flooring can be slippery when wet,

and cordon and/or block off areas with wet floors that open decks including the restaurant area floors can be slippery when wet, Ms. Short would never have walked onto the floor surface. Ms. Short therefore would never have slipped and fallen onto the hard floor surface.

52.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## FOURTH CLAIM FOR RELIEF ON BEHALF OF MS. SHORT
### Negligent Design, Construction, and/or Selection of Materials

53.     Ms. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

54.     This is an action for negligence due to Carnival's participation design, construction and selection of materials. Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows. Carnival's *Legend* was built at Helsinki New Shipyard in Helsinki,

Finland.  The Carnival's *Legend* was launched on December 17, 2001, and made its maiden voyage December 1, 2002.  Carnival custom designed and custom built the *Legend* to Carnival's specifications, which includes Deck 9's flooring. Any refits, modifications and/or changes made to the Carnival *Legend* were made in accordance to Carnival's custom designs and selection of changes and modifications of areas and features of the *Legend*.

55.      Years after the Carnival *Legend* was built, Carnival chose to install composite resin flooring on its open decks.  Carnival chose to install this same and/or similar composite resin flooring throughout its fleet.  Carnival continues to repair, modify and/or install the same and/or similar composite resin flooring on all its ships including the Carnival *Legend*.  At all times Carnival had the ultimate control over the design and construction of the *Legend*. Carnival had the right to inspect both the designs on paper and the design and construction at the yard.  Carnival had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Legend* including the flooring installed on the open decks.  Carnival had the right to reject any and all items, designs and construction.  Carnival holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

56.      Carnival also custom designed and built the entire *Spirit*-class ships.  The Carnival *Spirit*-class ships include the *Luminosa, Legend, Miracle, Pride,* and *Spirit*. Carnival built the Carnival *Conquest* at Helsinki New Shipyard in Helsinki, Finland. The *Legend* launched on December 17, 2001 and first maiden voyage was on December 1, 2002.  Carnival custom designed and custom built the *Legend* to Carnival's specifications including the flooring on the open decks which include the restaurant areas. During refits, the changes and modifications to the Carnival's *Legend* was made in accordance with Carnival's custom designs and selection of changes and

modifications of areas and features of the *Legend*. At all times Carnival had the ultimate control over the design and construction of the *Legend*. Carnival could inspect construction, items and designs and refuse to approve the design, construction and selection of all materials to construct all aspects of the *Legend* including the flooring on the open decks which include the restaurant areas. Carnival holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

57.     A cruise line, like Carnival, may be found liable for negligent design when the cruise line created, participated in or approved the design of the area of injury. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837 (11th Cir. 2012); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013). Carnival maintains shoreside departments that are responsible for creating, participating in and/or approving the design, selection and construction of all aspects and/or features of Carnival's ships including flooring. Carnival also maintains shoreside departments that create, participate and/or approve changes and modifications to the design, construction and selection of materials when Carnival refits or modify its ships including its flooring. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by Carnival. As such, Carnival maintained the ultimate control over the design and construction of the *Spirit*-class ships including the *Legend*. Upon information and belief, Carnival's contract with the shipyard allowed Carnival to make progressive payments as work was completed. Carnival's payment scheme allowed Carnival the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

58.     Carnival chose to create, design, and provide open decks with restaurants for its passengers, including Ms. Short, to spend time socializing, relaxing, eating food, and drinking

beverages all carefully provided for by Carnival.  Carnival operates open decks aboard all of its ships, including the *Spirit*-class and *Legend*.

59.     Carnival knew or should have known the design, construction and selection of flooring materials for its open decks including the area surrounding Guy's Burger Joint was unreasonably dangerous. Carnival knew or should have known that Carnival's design, construction and selection of the flooring materials on its open decks including the restaurant areas fail to comply with industry standards.

60.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including Ms. Short herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**." *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is liable for its negligent design, construction, and/or selection of materials used on Carnival's cruise ship.

61.     Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Carnival's open decks are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should

have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.  Carnival therefore knew the importance and necessity to train and supervise its crew members to keep its open deck floors clean and dry.

62.     Carnival's duty to design, construct and select materials for all areas and features of its vessels, including the flooring on its open decks including the restaurant areas aboard the *Legend*, is part of Carnival's duty of reasonable care under the circumstances.  Carnival had a duty to design the flooring in a reasonably safe manner and in accordance with industry standards. Carnival's duty is part of its duty of reasonable care under the circumstances.

63.     Carnival breached its duty of care owed to Ms. Short and was negligent by failing to design, construct, select, approve and/or reject the flooring materials used on the open decks including the restaurant areas.  Carnival failed to design, construct, select, approve and/or reject flooring materials that complied with industry standards. The flooring materials Carnival selected and used to construct the flooring on the open decks was unreasonably slippery when wet and dangerous.

64.     Because Carnival had the ultimate control over the design, construction and selection of materials for its ships, Carnival could refuse to approve the design, construction and selection of materials used for the flooring on the open decks including the restaurant areas. Carnival knew or should have known about the dangerousness of the flooring.

65.     Carnival knew or should have known of the dangerousness of the open deck flooring including the restaurant areas since the installation of the flooring on or before December

1, 2002, and/or any subsequent changes or modifications made to the flooring and/or restaurant areas and/or any and all other instances Carnival made changes or modifications to the flooring. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

66.     Carnival's negligent design, construct and select materials proximately caused Ms. Short's injuries.  Had Carnival properly designed, constructed and selected the materials of the flooring on the open decks including the restaurant areas, Ms. Short would never have walked onto the dangerous floor surface.  Ms. Short therefore would never have slipped and fallen onto the hard floor surface.

67.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

### FIFTH CLAIM FOR RELIEF ON BEHALF OF MS. SHORT
### Negligent Crowd Control

68.     Ms. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

69.     This is an action for negligence due to Carnival's negligent crowd control.  Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows.  The Carnival *Legend* has a capacity of 2,610 passengers and 930 crew members. Carnival's open decks including the restaurant areas are highly trafficked by its passengers and crew members.  Because of the high-volume traffic on the open decks including the designated restaurant areas, it is important for Carnival to control passenger foot traffic on its open decks. Due to the high-volume traffic, Carnival's open decks including the restaurant areas floors repetitively get wet with liquids from spills, food, drinks, grease, oils, lotion, and/or water by passenger(s) and/or crew member(s). Hundreds if not thousands of Carnival passengers repeatedly enter and exit Carnival's open deck restaurants throughout the day and drip and track water, grease, food, drinks, oils, lotions, and other liquids throughout the open decks including the restaurant table areas. Carnival's floor surfaces on its open decks including the restaurant areas are slippery when wet.  Wet areas can blend with Carnival's open decks including the restaurant area floor surfaces.  Carnival passengers may not know how slippery its floor surfaces on its open decks can be when wet.

70.     Carnival should warn its passengers that the floor surfaces on Carnival's open decks including the restaurant areas can be slippery when wet. Carnival documents prior slip and falls, complaints of slipperiness and repetitively wet floors on its open in various ways which may include prior shipboard meetings; prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface.  Carnival also distributes

crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos regarding its open deck and/or restaurant areas. Carnival's negligent crowd control created a hazardous condition which caused the floor to become dangerously slippery when wet.

71.     Carnival either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

72.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including Ms. Short. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent shipboard crew members.  Carnival owes a duty not to unreasonably create or allow a crowd to form on its open decks such that the crowding causes injuries to passengers.  *Lancaster v. Carnival Corporation*, 85 F.Supp. 3d. 1341 (S.D. Fla. Feb. 9, 2015).  Carnival owes a duty to implement and exercise the due level of safety procedures intended to prevent crowding including on Carnival's open decks. *Lancaster v. Carnival Corporation*, 85 F.Supp. 3d. 1341 (S.D. Fla. Feb. 9, 2015).

73.     Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C, Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe

condition clear of obstacles.")  Carnival's open decks are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition.  Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.  Carnival therefore knew the importance and necessity to train and supervise its crew members to keep its open deck floors clean, dry, and free from overcrowding.

74.     Carnival breached its duty of care by failing to control passenger foot traffic on its open decks including the restaurant areas.  Carnival breached its duty of care by failing to control crowds of passengers from dripping and tracking water, food, debris, grease, lotions, oils, and/or liquids from throughout the open decks including the restaurant areas.  Carnival breached its duty of care by failing to prevent passengers from walking through areas Carnival knew or should have known to be wet on its open decks including the restaurant areas.  Carnival breached its duty of care by failing to warn the hundreds if not thousands of passengers who traverse the open decks including the restaurant areas, by warning sign or cone, audio announcement or other means that its open deck including the restaurant area floors can be slippery when wet.  Carnival breached its duty of care by failing to comply with Carnival's own standards on warning passengers of wet floors, cordoning off or placing warning signs on wet floors, verbally warning and/or instructing passengers not to walk on wet floors that can be slippery when wet and/or inspecting and maintaining open decks including the restaurant area floors which Carnival knew or should have

known are used by large crowds of passengers. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

75.     Carnival's negligent crowd control proximately caused Ms. Short's injuries. Had Carnival properly controlled Carnival's crowds of passengers on the open deck including the restaurant areas, Ms. Short would never have walked onto the dangerous floor surface.  Ms. Short therefore would never have slipped and fallen onto the hard floor surface.

76.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## SIXTH CLAIM FOR RELIEF ON BEHALF OF THE CLASS
### Negligent Failure to Provide Reasonably Safe Ship

77.     Ms. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

78.     This is an action for negligence due to Carnival's negligent failure to provide a reasonably safe ship. Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows.  Carnival's open deck floors repetitively get wet with liquids from spills and/or dripping, tracking of liquids by passenger and/or crew member foot traffic. Carnival's passengers, throughout the day, drip and track water, drinks, food, grease, debris, oils, lotions, and other liquids throughout the open decks including the restaurant areas. Carnival's floor surfaces on its open decks including the restaurant areas are slippery when wet.  Wet areas can blend with Carnival's open decks floor surfaces.  Carnival passengers may not know how slippery its floor surfaces on its open decks, which include the restaurant areas, can be when wet.

79.     Carnival documents prior slip and falls, complaints of slipperiness and water accumulations on the same or similar type of floor where the plaintiff slipped and fell is slippery when wet based which may be documented in prior shipboard meetings; databases or logs of; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface. Carnival distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos regarding wet open area flooring. Carnival trains its crew members to warn passengers of wet floors by using wet floor signs, marking the area or blocking off the area to prevent passengers from walking on wet floors. Carnival knew or should have known its open decks including the restaurant area floors are hazardous when wet which make Carnival ships unreasonably unsafe. Carnival either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

80.     Carnival owes a "duty to exercise reasonable care for the safety of its passengers" including Ms. Short. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL

1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**.**" *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly responsible for its failure to provide a reasonably safe ship.

81.    Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Carnival's open decks areas are escape routes that Carnival knew or should have known it must maintain in a safe, clear, clean and dry condition. Carnival, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Carnival knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Carnival, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials. Carnival therefore knew the importance and necessity to train and supervise its crew members to keep its open decks clean and dry.

82.    Carnival breached its duty of care by failing to provide a reasonably safe ship. Carnival breached its duty of care by failing to inspect and maintain its open deck floors including the restaurant areas in a reasonably clean and dry condition. Carnival breached its duty of care by

failing to block off and/or cordon off wet areas on Carnival's open decks to prevent passengers from walking on slippery wet floors.  Carnival breached its duty of care by failing to design and select materials for its open deck floors which are reasonably safe when wet. Carnival breached its duty of care by failing to train and supervise its crew members to inspect, maintain, warn, cordon off and prevent passengers from walking on open decks including the restaurant areas which Carnival knew or should have known are slippery when wet.  Carnival breached its duty of care by failing to control crowds on its open decks which Carnival knew or should have known passengers repetitively track and drip water and other substances throughout its open decks including the restaurant areas.  Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

83.     Carnival's negligent failure to provide a reasonably safe ship proximately caused Ms. Short's injuries.  Had Carnival properly provided a reasonably safe ship, which includes Carnival's open decks, Ms. Short would never have walked onto the dangerous floor surface. Ms. Short therefore would never have slipped and fallen onto the hard floor surface.

84.     Carnival's negligence proximately caused permanent injuries and damages to Ms. Short in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, aggravation of pre-existing condition, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either

permanent or continuing.  Ms. Short has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## SEVENTH CLAIM FOR RELIEF ON BEHALF OF MR. SHORT
### Loss of Consortium

85.     Mr. Short hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

86.     As a consequence of the subject incident, Ms. Short sustained significant and permanent injuries as further alleged above.

87.     Before suffering the injuries resulting from the subject incident, Ms. Short was able to and did perform all the duties of a wife and did perform these duties, including but not limited to maintaining the home, providing love, companionship, affection, society, marital relations, moral support, and solace to her husband, Mr. Short.

88.     Mr. Short suffered from loss of society and consortium as a result of the injuries to his wife, Ms. Short.

**WHEREFORE**, Plaintiffs sue Carnival, and demand judgment against Carnival for all legally permissible damages exclusive of reasonable attorney's fees, costs, and interest, in an amount in excess of the jurisdictional limits of this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated:        January 16, 2023.                    Respectfully submitted,

                                                  **THE G LAW GROUP, P.A.**
                                                  *Attorneys for the Plaintiffs*
                                                  429 Lenox Avenue
                                                  Miami Beach, FL 33139
                                                  Tel: (305) 486-7468
                                                  Fax: (786) 460-8333
                                                  sgenadiev@theglawgroup.com

                                        By:       */s/ Simeon Genadiev*
                                                  **SIMEON GENADIEV, ESQ.**
                                                  Florida Bar No.: 100918